JAMES HORNER and JAMES LUDLUM, Respondents, *v.* DAVID H. LYMAN and RICHARD L. ALLEN, Appellants.

UNDERTAKING ON APPEAL. LIABILITY OF SURETIES. MODIFICATION OF EXISTING LIABILITY ON AN UNDERTAKING BY ACT OF LEGISLATURE. DAMAGES. PRACTICE. CODE OF PROCEDURE.

The opinions in this case are inserted in the order as rendered, though the positions taken by the judges, respectively, upon a main point in the controversy, are so far different as, in effect, to constitute the opinion of MILLER, J., a dissenting opinion. The opinion of GROVER, J., was for an absolute affirmance of the judgment below; that of MILLER, J., for a conditional affirmance, or the affirmance of a reduced amount. The opinion of GROVER, J., is to be taken as that of the court, and is to the following effect: that

The sureties, in an undertaking upon an appeal, enter into the same, subject to the power of the legislature to change the law in respect to the damages that may be awarded, and are bound by the contract construed by the law as it exists at the time when they are called upon to perform it. Hence,

Where, after an undertaking in the usual form to stay execution upon an appeal, the law was amended (Laws of 1858, ch. 306, § 11, subd. 6), authorizing the Court of Appeals, in its discretion, to allow ten per cent damages for delay, and, upon the affirmance of the judgment in such case, the court did make an allowance of five per cent for the delay, *held*, that the sureties were not discharged from their liability by reason of this statutory increase in the amount of damages that might be awarded on affirmance of the judgment.

If it were true, that an amendment increasing the damages that might be allowed, could only operate prospectively, and to cases thereafter brought on appeal, the allowance of the statutory increase in a case pending at the time of the passage of the amendment, though an error, would not discharge the sureties from their liability, but would be the ground for a motion to correct the erroneous judgment, and such motion could be made only in the original cause, according to the practice in this State, and the question cannot be raised by the sureties in an action against them upon their undertaking.

This case presents no analogy to those in which parties by their own acts have changed their contract to the prejudice of the surety without his consent.

THIS action is brought upon two undertakings executed by the defendants above named, on an appeal from two judgments in the Supreme Court, recovered by these plaintiffs

and one Edmund F. Grant, against Cortland Wood and John O. Lyman.  The undertakings are both dated May 12, 1857, and are in the usual form, to stay execution.  After the recovery of the two judgments in the Supreme Court, which was on September 17, 1855, and before the appeal was taken to the Court of Appeals, Edmund F. Grant died, and his administrator, William H. Grant, assigned all his interest in said judgments to the co-plaintiffs, Horner and Ludlum. Both the judgments were affirmed in the Court of Appeals, with ten per cent damages for delay, etc., as authorized by the statute of 1858; and the judgments were perfected in Westchester county, July 30, 1861, and executions issued and returned unsatisfied.

Two several actions were commenced against these defendants on their undertakings, August 23, 1861.  They then answered, setting up the act of the legislature of 1858, enabling the Court of Appeals to award damages on affirming judgment, and thereby increasing the liabilities of the sureties, after they had executed the undertakings; discharged the defendants from liability.  After the answers were put in, the actions were consolidated by an order dated July 14, 1862.

The action was tried at Westchester Circuit, March 19, 1863, by Mr. Justice Lott (without a jury).  The question discussed in the opinion was raised upon the trial, and exceptions duly taken to the refusal to nonsuit and dismiss the complaint, and to the legal conclusions of the judge, who ordered judgment for the plaintiffs; and judgment was perfected March 20, 1863, for $4,813.83, damages and costs; from which an appeal was taken by the defendants to the General Term, where the judgment was affirmed; and from which judgment the defendants appeal to this court.

*Carpentier & Beach*, for the appellants, and *John K. Porter*, of counsel.

This is an appeal from a judgment of the General Term in the second district, affirming a judgment against the defendants for $4,813.83.

The action was on an undertaking, executed by the defendants on the 12th of May, 1857, as sureties in another action on appeal to the Court of Appeals.

The principal question involved is, as to the effect on the obligation of the sureties, which followed from the course of the respondents in that action, in taking judgment in this court, not only for principal, interest and costs, but also for ten per cent damages in addition for delay, on the entire amount of the recovery, under authority of a statute passed eleven months subsequent to the execution of the undertaking.

The facts are briefly stated in the findings of the judge. The questions discussed in the following points were duly raised on the trial, and exceptions were duly taken to the refusal to dismiss the complaint, and to the legal conclusions of the judge:

I. When the undertaking was executed in May, 1857, the only damages which could be awarded on appeal, were interest on the amount recovered, and the costs and disbursements incurred on such appeal; and these were the only "damages" on appeal, which the sureties in fact contemplated, or which in legal effect they contracted to pay.

1. At an antecedent period, the Court of Errors was authorized, on affirming a common law judgment, or chancery decree, "To award damages for the delay and vexation, to be assessed in the discretion of the court." (2 R. S. 618, §§ 32, 35.)

2. The original of this was the statute of 3 Henry VII, c. 10, stated in *Newland* v. *Holmes*, 4 Queen's Bench, 886. (48 Eng. Com. Law.) It was an extension of the "amercement, *pro falso clamore*," formerly imposed upon suitors in the original court only, but not in the appellate court. Blackstone calls this fine, "*damages* against the plaintiff who prosecutes a groundless action." (3 Black. Com. 275.)

3. The statute substantially limited the amount of allowances for such damages, by limiting the penalty of the bond in that regard to $300. (2 R. S. 596, § 27, subd. 3.)

4. No such power was ever vested in, or exercised by, the Court of Appeals prior to 1858; and the only damages which

the court could award beyond the judgment, or which the surety undertook to pay, were the interest on the sum recovered and the costs of the appeal.

5. An undertaking to pay the debt, interest and costs, if the appellant failed, was a different engagement from one, to pay for him a discretionary fine for bad faith in prosecuting a groundless appeal.

6. The failure to vest any such power in the Court of Appeals until 1858, was not the only omission in the Code, which made subsequent legislation necessary. There was a like omission to provide for the case of the dismissal of an appeal, and prior to the amendment in that respect, the court held that where the appeal was dismissed, the surety was absolved. (*Drummond* v. *Husson*, 14 N. Y. 60.)

7. By the act of April 17, 1858, section 307 of the Code was amended, by inserting in the 6th subdivision, a clause investing the court with authority to punish the party for taking a dilatory appeal. The words of the clause are: " And when a judgment is affirmed, the court may, in its discretion, also award damages for the delay, not exceeding ten per cent on the amount of the judgment." (Laws of 1858, 493, § 11, subd. 6.)

II. The amendment of 1858 does not extend to appeals taken previous to that date.

1. Its incorporation into the pre-existing. Code does not render it retrospective.

" The effect of an amendment of a statute made by enacting that the statute is amended so as to read as follows, and then incorporating the changes or additions with so much of the former statute as is retained, is not, that the portions of the amended statute which are merely copied without change, are to be considered as having been repealed and again re-enacted, nor that the new provisions, or the changed portions, should be deemed to have been the law at any time prior to the passage of the amended act. The part which remains unchanged, is to be considered as having continued the law from the time of its original enactment, and the new or changed portion to have become law, only at, and subse-

quent to the passage of the amendment." (*Ely* v. *Holton*, 15 N. Y. 595.)

2. The amendment is not in terms retrospective, and should not be so construed. (*Bailey* v. *Mayor of New York*, 7 Hill, 146; *Bull* v. *Ketchum*, 2 Denio, 188; *Hamilton* v. *Averill*, 11 Wend. 622, 624–5; *Beatty* v. *Smith*, 2 Hen. & Munf. 397; *Burr* v. *Calvalho*, 4 Nev. & Man. 894; *Rex* v. *Wise*, 2 Barn. & Ad. 204, and note.)

(*a*) In the case of *Bailey* v. *Mayor of New York*, first above cited, it was held, that "the third section of the act passed May 7, 1844, authorizing interest to be taxed upon verdicts, etc., does not apply to verdicts rendered before the act was passed, but it is to be construed prospectively." NELSON, Ch. J., said: " Notwithstanding the peculiar phraseology of the section relied on by the plaintiff's counsel, we think it ought not to be so construed as to give it a retroactive effect." (7 Hill, 146.)

(*b*) In *Bull* v. *Ketchum*, the court applied the same rule. BRONSON, Ch. J., said: " The law of 1844 gives interest on the verdict from the time it was obtained to the time of the judgment, whichever party may have caused the delay; but the statute does not retroact, and this verdict was rendered before the law was enacted." (2 Denio, 188.)

(*c*) An appellee, the obligee of an appeal bond executed previous to the Revised Statutes, in whose favor judgment is rendered upon the appeal, is not bound, for the purpose of enforcing his claim against the surety, to issue execution upon such judgment within thirty days after its rendition; such provisions being applicable only to bonds executed subsequent to the Revised Statutes going into operation. SAVAGE, Ch. J., said: "It was not competent to the legislature to change the obligation to the prejudice of the surety." (11 Wend. 622, 624–5.)

(*d*) The case of *Beatty* v. *Smith* is to the same effect. (2 Hen. & Munf. 397.)

(*e*) The statute of William IV, chapter 42, section 30, enacted: " That if any person shall sue out any writ of error upon any judgment whatsoever, given in any court in any

action personal, and the court of error shall give judgment for the defendant thereon, then interest shall be allowed by the court of error, for such time as execution has been delayed by such writ of error for the delaying thereof." .

A writ of error was sued out before the act passed. The court held, that "Section thirty is prospective only in its language, and cannot therefore apply to this case. Consequently interest cannot be allowed." (*Burn* v. *Carvalho,* 4 Nev. & Mann. 894.)

III. If the amendment could be construed as retrospective, it would to that extent be plainly void, at all events in respect to sureties on previous appeals; for it would not only be an *ex post facto* fine or penalty, but it would be imposed on the sureties, without their consent, and for a wrong committed by their principal before its enactment. (*Burch* v. *Newbury,* 10 N. Y. 396.)

IV. Certainly, the recovery cannot be sustained against the sureties, to the extent of the penal addition of ten per cent.

1. These were not damages for the recovery of which the plaintiff's action was brought, but legislative damages to punish the other party for interposing a defense which failed, independent of, and beyond the costs of the litigation.

2. That such damages cannot be superadded, as against the surety, under laws passed subsequent to the appeal, has been adjudged by the Court of Appeals in two of the States, and there are no decisions in conflict with these adjudications. (*Steen* v. *Finley,* 25 Miss. 535; *Woodson* v. *Johns,* 3 Munf. Va. 230; *Jeter* v. *Langhorne,* 5 Grat. 210.)

(*a*) In the case just cited, the action was against the principal and his sureties, and the latter defended. The bond was executed in 1837. In 1839 a law was passed, making it the duty of the court in such cases, "to give judgment for ten per cent damages, in addition to the interest now allowed by law" upon the amount of the recovery. The court below having given this ten per cent damages, the judgment in this respect was reversed, the Court of Appeals saying:

"We could not apply the statute to this case without giving

it a retrospective application, and also *enlarging the contract of the sureties.*"

"When they became bound as sureties of N. S., *there was no law imposing such a penalty;* nor do we think the court can now impose any additional burden upon them, not undertaken by them at the time they entered into the bond." (25 Miss. 535, 549.)

(*b*) In *Woodson* v. *Johns*, the action was against the principal and sureties on an injunction bond, executed in 1791.

After its execution, an act was passed providing that the Court of Appeals, "*in all cases* where any decree rendered for any sum of money, etc., shall on appeal therefrom be affirmed, shall award to the appellee damages at the rate of ten per centum."

The bill in the injunction suit having been dismissed, the decree of dismissal was afterward affirmed by the Court of Appeals, with ten per cent damages.

In the subsequent recovery against the sureties, the ten per cent was included. The judgment was held to be erroneous, and one of the grounds assigned by the court for the reversal was, that "no such damages on the affirmance of a decree in chancery were allowed at law, *at the time of executing the said bond.*" (3 Munf. 230.)

(*c*) The doctrine of this case was afterward re-affirmed by the Court of Appeals. Referring to the case in 3 Munford, the court said, the decision in that case was "in principle conclusive as to the damages allowed by subsequent laws." (5 Grat. 210.)

V. There is no force in the position taken in the court below, that as *costs* are always variable in amount, and as statutory changes in their rates bind sureties through retrospective, a similar rule should apply to *legislative penalties* for vexatious litigation.

1. The question, here, is not as to the effect of a retrospective alteration of the rate of *costs.* Damages are not costs, though costs are sometimes an element of damages. It has been adjudged, that an undertaking to pay the one, imposes

no obligation to pay the other. (*Langley* v. *Warner*, 1 Comst. 607.)

2. The damages visited upon the party, under this provision, are precisely what they purport to be — a statutory penalty for taking a dilatory appeal.

VI. The sureties are *wholly absolved* from their undertaking, by the act of the plaintiffs in procuring this statutory penalty to be included in the judgment.

1. This does not belong to the class of cases where the undertaking is for the fidelity of an officer or agent in the discharge of *indefinite and variable duties.*

(*a*) The case of the *People* v. *Vilas* (36 N. Y. 659), was that of a *public officer*, the suit being on the bond for the discharge of his official duties.

(*b*) In distinguishing the case from that of *Bonar* v. *McDonald* (1 Eng. Law & Eq. 1), the court said, that "was a case between *private parties*, a bank and its agent, where the duties and responsibilities of the latter were increased by the bank, and has no application, therefore, to the present case." (36 N. Y. 463.)

(*c*) The court gave judgment on this precise distinction, and said: "As between *private* parties, the law is, that any alteration in the obligation or contract, in respect of which a person has become surety, without the consent of the latter, extinguishes his obligation and discharges him; and this result follows, irrespective of the inquiry, whether the alteration could work to the injury of the surety or not. The *reason* upon which this rule is founded is, that the surety has never made the contract upon which it is sought to charge him. His answer is, if it is sought to charge him upon the *altered* contract, that he never made any *such* bargain; and if upon the original contract, that such contract no longer exists, having been legally terminated by the altered or substituted contract made by the parties. In either contingency, the answer furnishes a complete defense. It is claimed by the defendants, that the same rule is applicable to *official* bonds. In this they are right, *if the reasons apply and the same answers can be given.*" The court then pro-

ceeds to show that in the case of an officer, the same reasons do not apply. (36 N. Y. 459.)

(*d*) In that case the court held also, that the duties superadded were of the same nature with those originally imposed; and on that ground distinguished it from the case of *Pybus* v. *Gibb* (6 Ellis & Black. 903), where the duties were of another nature, and to be executed in an extended jurisdiction; but even in the case of a public officer, the court said: "That imposing duties of another description, and not appropriate to the office, would discharge sureties not coming within such contemplation." (36 N. Y. 463.)

(*e*) The case of *The Mayor of New York* v. *Ryan* (3 Trans. Ap. 363), was identical with that of *The People* v. *Vilas.*

(*f*) In the case of the *Rochester City Bank* v. *Ellwood*, the question turned on the construction of the bond, which was conditioned that Gold should "faithfully discharge the trust reposed in him as such assistant book-keeper." The duties of his trust were not defined, and in practice they varied from time to time, his entries being made at first in only part of the books, and afterward in all. He made false entries in one of these books, to cover an embezzlement of funds.

The court held, that the act was a breach of the bond; that the duties of the trust were undefined; that making false entries in any book of the bank was within the scope of his employment; and that the undertaking of the sureties was for his fidelity in that employment, and not in keeping one book of the bank more than another.

WRIGHT, J., in delivering the opinion, said: "I agree that the surety cannot be holden beyond the fair scope of his engagement, *as intended by the parties when undertaken;* but the question is, what was this intention, as expressed in the instrument, *construed in the light of the circumstances surrounding its execution.*" (21 N. Y. 90.)

Again, he says: "The contract did not *define the trust reposed,* but indicated the department of duty to be assigned, and guaranteed that the appointee was a trustworthy person

to be introduced into the bank to discharge that duty. Its obvious intention was to vouch for his honesty and fidelity in his trust as an employee of the bank. (21 N. Y. 91.)

2. Here the obligation assumed by the surety was definite. He was to pay the judgment, if affirmed, the costs, and the damages; which, as the law then stood, were simply the interest on the judgment appealed from.

3. It is conceded in all the cases, that as between private parties, a voluntary alteration of the liability of the surety extinguishes his obligation; and this whether it be by a change of the instrument, or by acts *in pais*.

4. Thus, a collector's bond recited his appointment for eight townships. A ninth was afterwards added, with the assent of the collector, but without that of the sureties, and it was held that they were wholly discharged.

Judge STORY said: "The stress of the argument is, that there was an enlargement and not an extinguishment of the appointment; that the consent of the immediate parties being given to the alteration, it remained in full force, with all its original validity, as to the eight townships."

"We cannot accede to this view of the case. * * It is not that appointment, which the defendant, Stewart, referred to in the condition of the bond, and in respect to which he contracted the obligation. It is no answer to say, that it is not intended to make him liable for any money, except what was collected in the eight townships. He has a right to stand upon the terms of his bond." (*Miller* v. *Stewart*, 9 Wheat. 706.)

The doctrine of this case has recently been re-affirmed in the same tribunal. (*Smith* v. *United States*, 2 Wall. 234.)

5. The cases are clear and decisive, and they might be indefinitely multiplied, showing that a change in legal relations produced by a party's co-operation with the forms and proceedings of the law, is to be deemed the voluntary act of the party, and not the act of the law.

6. Thus, where the plaintiff had agreed to take pay in furniture for boarding the defendant, but the defendant suffered it to be sold under an execution against him, the

court said: "We consider the case to be the same in effect, as if the defendant had himself taken away the furniture and sold it; and that the plaintiff is in consequence entitled to recover the value of the board by the ordinary action of debt, as if the special contract had not existed." (*Keys* v. *Harwood,* 2 Com. Bench, 905; 56 Com. Law.)

7. So, where an annuity was bequeathed, to terminate if the annuitant should attempt to sell, and he afterward petitioned for relief, as an insolvent debtor; *held,* that the proceedings must be deemed voluntary, and a forfeiture of the annuity.

Knight BRUCE, V. C., said: "He has, in effect, executed a parliamentary power; that is, he has voluntarily elected to do that act, which, being done, brings the provisions of the acts of parliament into operation. In effect, therefore, *the vesting order is procured by himself.* For every substantial purpose, it is his own act." (*Brandou* v. *Aston,* 2 Young & Coll. Ch. Cas. 24.)

8. So, where a tenant, under covenant not to transfer a lease, confesses a judgment to a creditor, that it may be sold on execution, it was held equivalent to a voluntary transfer, and a forfeiture was adjudged. (*Doe* v. *Carter,* 8 T. R. 300.)

9. In view of the principles thus settled, it is clear that the act of the plaintiffs, in procuring the statutory penalty to be embraced in judgment, altered and extinguished the liability of the sureties, by increasing, beyond recall, the measure of their liability.

VII. It is no answer to these views to claim that the legislature, by giving to this penalty the name of damages, brought it retroactively within the terms of the previous bond.

1. When the undertaking was executed, the word damages had no such import in connection with an appeal to this court.

2. The change, wrought out through the amendment, affected not merely the extent of the liability, but also the subject matter of the obligation.

3. The authorities are decisive in support of the proposition, that though the altered liability, arising from subsequent

acts in *pais*, be within the terms of the previous undertaking, it is not within the legal operation and effect of the instrument.

(*a*) "A variance in the agreement to which a surety has subscribed, which variance has been made without the surety's knowledge or consent, and which may prejudice him, or amount to the substitution of a new agreement for a former one, will discharge the surety, though the original agreement, notwithstanding the variance, may be that on which the liability is substantially incurred."

"A becomes surety for B's conduct as a clerk in a bank. B was subsequently appointed to a better situation in a branch of the same bank, and A extended his suretyship to this new situation. B, afterward, while remaining in the same situation, undertook, on having his salary raised, to become liable to one-fourth of the losses on discounts. No communication of this new arrangement was made to A. B allowed a customer considerably to overdraw his accounts, and thereby the bank lost a sum of money.

*Held*, that the surety could not be called on to make good this loss, though it fell within the terms of the original agreement; as the fresh arrangement was the substitution of a new agreement for the former one, and A was thereby discharged." *Bonar* v. *McDonald*, 3 House of Lords Cas. 226.)

(*b*) In *Pybus* v. *Gibb*, the sureties were sued on a bond for the faithful performance of his duties, given for a bailiff to the high bailiff. Admitting the misconduct of their principal, they claimed that they were absolved from their obligation, as after its execution the jurisdiction of the county court was extended by act of parliament, thus augmenting the duties of the bailiff and increasing the risk of his sureties. The court held, on demurrer to the plea, that, though they undertook for the bailiff, and the case was within the terms of the bond, the sureties were discharged by the legislative alteration in the subject-matter of the obligation, and the effect of the engagement. Lord CAMPBELL, Ch. J., said: "The question is, whether the nature and functions of the office or employment are changed; for if they are, it is not

the·same office, within the meaning of the bond." (So in this case, the damages subsequently authorized by way of penalties for taking an appeal, were not the same damages contemplated in the undertaking.)    Lord CAMPBELL met the objection that inconvenience might arise from the failure of official bonds through such legislative oversights, by suggesting the appropriate legislative remedy : " The surety bonds may be framed, so as to continue the liability of the sureties, whatever alteration might take place by act of the legislature.    As it is, I think the liability of the sureties on this bond at an end." (6 Ellis & Blackb. 902.)

The judgment of the Supreme Court should be reversed with costs; and as the questions of law arise on undisputed facts, final judgment should be ordered for the defendants.

*E. Wells,* for the respondents.

I. The objection to the proof of a parol assignment of E. F. Grant's interest in the judgments to his co-plaintiffs, by Wm. H. Grant, the administrator, is untenable.    The judgment, as to its assignable quality, was but a chose in action (*Ford* v. *Stuart,* 19 Johns. 342, 344), and as such was assignable by parol. (*Briggs* v. *Dorr,* 19 Johns. 95; *Ford* v. *Street,* id. 342; *Horner* v. *Wood,* 15 Barb. 371, 372; 4 T. R. 690; 4 Taunt. 326.)

It appeared, affirmatively, that the assignment was by parol, and not in writing.    The proof, therefore, was not objectionable as being secondary; and it was sufficient to maintain the issue on the plaintiffs' part.

· II. The executions were proper evidence, under the allegation of the complaint, that payment had been demanded of the original defendants, Wood and Lyman.

Besides, the complaint need not aver that plaintiffs exhausted their remedy against the original defendants, or demanded payment before suing the sureties.

1. The undertakings are given, under sections 334, 335, of the Code, and are in terms absolute and unconditional, that the appellants will pay.

Argument of Counsel.

Where the legislature intend that the respondent shall pursue his remedy against the defendant, before suing the surety, they have so provided, as in case of appeal from a justice's judgment, where the condition of the undertaking is, that, if judgment be rendered "against the appellant, and execution thereon be returned unsatisfied, in whole or in part, the sureties will pay the amount unsatisfied." (Code, § 356.)

2. It has been expressly decided, that, in an undertaking in the form of those in suit, the creditor need not exhaust his remedy on the judgment before enforcing the undertaking; and that he need not give notice to, nor demand payment from, the sureties. (*Stack* v. *Heath,* 4 E. D. Smith, 95; *Hubner* v. *Townsend,* 8 Ab. Pr. 234, 237.)

III. The undertakings are not void under the statute of frauds; the consideration is sufficiently expressed. (*Stack* v. *Heath,* 4 E. D. Smith, 101.)

IV. Grant had no interest in the undertaking, and his administrator had none; and hence, no averment or proof of assignment of the undertaking is necessary.

E. F. Grant was dead, and his administrator assigned his interests in the judgments in March, 1857, and these undertakings were not executed till May 12, 1857, and they were made for the benefit of Horner and Ludlum, who were then the owners of the judgments.

V. The act of April 17, 1858 (Sess. Laws, ch. 306, § 11), enabling the Court of Appeals to award damages on affirming a judgment for delay, does not discharge defendants from their liability.

1. The cases which hold that a public statute increasing the liability of the surety, discharges him, are cases of surety for a public officer, whose duties are to the government, which may, at its pleasure, release the surety by such an act.

If any such case can be found in England, where a surety to a contract between private parties has been declared to be released by legislation, it must be referred to the transcendent power of parliament, which can do every thing except make a man to become a woman. (2 T. R. 169; 5 Cow. 542.)

The power and jurisdiction of parliament, says Sir E. Coke (4 Just. 36), is so transcendént and absolute, that it cannot be confined, either for causes or persons, within any bounds. All the cases cited by defendants' counsel, are cases of public officers.

If any case can be found of a bond to a private person, or to a corporation, where the surety was held discharged by an increase of liability, it was by the act of the obligee, who may undoubtedly discharge the bond.

2. If the act of 1858 could, or must, be so construed as to release the defendants in this action, the act would, so far, be void, as impairing the obligation of a contract. (Const. U. S. art. 1, § 10, 3 subd. 1.)

3. The act does not extend the liability of the sureties beyond the terms of their undertaking.

The undertaking is to pay all damages, as well as costs, that may be awarded on appeal, although the surety is not bound beyond the fair import of the terms of his engagement. (*Miller* v. *Stuart*, 9 Wheat. 680; *United States* v. *Kilpatrick*, 9 id. 720; *Warden of St. Savior's, Southwark*, v. *Bostock*, 2 N. R., Scota's, 175.) Yet he will be bound to the full extent of the terms of his agreement, and they will be construed against him, and in favor of the guarantee, as far as their reasonable import will allow. (*Mason* v. *Pritchard*, 12 East, 227; *Merle* v. *Wells*, 2 Campb. 413; *Lansom* v. *Bell*, id. 39; *Hargreave* v. *Snell*, 6 Bing. 244; *S. C.*, 3 Moore & Payne, 573; *Evans* v. *White*, id. 136; *Bent* v. *Hartshorn*, 1 Metc. 24; *Dick* v. *Lee*, 10 Peters, 492; *Manrow* v. *Ballus*, 16 id. 536; 2 Story on Contr., 4th ed., 1856, p. 409, § 866.)

VI. The breach of the condition of the undertaking is well assigned.

VII. There is not a probable ground for this appeal, and the defendants have kept plaintiffs out of their money for eight years, and put them to much cost; and the judgment should be affirmed, with ten per cent damages for the delay.

MILLER, J. Each of the instruments upon which the plaintiffs recovered in this action was in the usual form of

an undertaking, upon an appeal to the Court of Appeals, and provided for the payment of the judgment recovered, as well as for all damages which should be awarded upon the appeal. These undertakings were executed prior to the passage of an act of the legislature, by which section 307 of the Code was amended, by inserting in the sixth subdivision of that section, which provided for costs on appeal to the Court of Appeals, the following clause : " And when a judgment is affirmed, the court may, in its discretion, also award damages for the delay, not exceeding ten per cent on the amount of the judgment." (S. L. of 1858, p. 49.)

When the undertakings in question were entered into then, there was no provision which authorized any such damages to be awarded, and the first question which arises for our determination in this case is, whether the amendment cited extends to appeals taken previous to the period when it was adopted, and embraces the undertakings upon which the judgment in this action was obtained.

I think that the amendment cited was not retrospective in its operation, and did not include appeals which were perfected prior to the time of its enactment. It is a general rule, that no statute is to have a retrospect beyond the time of its commencement. (Bac. Abr., Statute.) And Blackstone, in his Commentaries (vol. 1, p. 46), says : " All laws shall be made to commence *in futuro,* and be notified before their commencement."

The effect of an amendment of a statute amending another statute and incorporating changes and additions, was considered in the case of *Ely* v. *Helton* (15 N. Y. 595), and it was held, that the part which remains unchanged is to be considered as having continued the law from the time of its original enactment, and the new or changed portion to have become law only at and subsequent to the passage of the amendment. Several other adjudications in this State hold, that amendments of a like character are not in terms retrospective, and should not be thus construed.

In *Hamilton* v. *Averill* (11 Wend. 622), an action was brought upon an appeal bond, entered into for the prosecu-

tion of an appeal from a judgment by a justice of the peace to the Court of Common Pleas, executed prior to the Revised Statutes, which provides, that if a judgment be rendered in favor of the appellee, that he should sue an execution thereon within thirty days after the time when such judgment was rendered, or the sureties on the appeal bond should be discharged, and it was decided, that the party obtaining the judgment was not bound to issue execution within the time provided, such provision being applicable only to bonds executed subsequent to the Revised Statutes going into operation.

NELSON, J., says, that "it was not competent for the legislature to change the obligation to the prejudice of the surety, and that they had not done so."

In *Bailey* v. *The Mayor of New York* (7 Hill, 141), a question arose, whether interest could be taxed upon a verdict rendered prior to the act of May 7, 1844, and it was held, that it did not apply to verdicts rendered before the act was passed, and that it ought not to be so construed as to give it a retroactive effect. The phraseology of the third section of the act, under which it was claimed, that interest was allowable, was general, and made it lawful for any party who should have a verdict or report in his favor, to tax interest upon it as costs.

In *Bull* v. *Ketchum* (2 Denio, 188), where the verdict was rendered prior to the passage of the act of 1844, it was held, that the statute did not retroact, and that the plaintiff could only have interest for the period during which he had been delayed in obtaining judgment by the acts of the defendant. (See also *Beatty* v. *Smith*, 2 Herring & Munfred, 397; *Burr* v. *Calvalk*, 4 Nev. & Man. 894; *Rex* v. *Wise*, 2 Barnw. & Ad. 204, and note, where similar questions were involved.)

It would seem to be quite clear that the amendment in question was not retrospective in its operation, and cannot affect an undertaking entered into prior to its adoption. The damages which the undertaking provides shall be awarded upon the appeal, evidently means such damages as it might

be lawful to impose at the time when the contract was made, and not such as legislative enactments, subsequently made, might add to those already existing. Such is the import and true meaning of the terms employed, and of the engagements entered into by the defendants, and I am not able to discover how those terms can be extended, by the application of any sound principle of law.

Nor is there, in my opinion, any validity in the position that the damages provided for, were in the nature of costs, which are subject to statutory regulation, which is obligatory upon sureties, although sometimes retrospective. The provision in question is not an enactment relating to the recovery of costs, but in the nature of a legislative penalty for vexatious delay in litigation. It is not general in its application, and does not embrace all cases without regard to their character, or the circumstances surrounding them, but its operation is restricted and confined to such only as the court, in the exercise of its discretion, shall adjudge to have been needlessly delayed by frivolous appeals. It requires a special direction of the court to award these damages, and they are only imposed as a statutory penalty, and as a punishment for a dilatory appeal.

Besides, costs and damages are distinctive in their character, and cannot be considered as the same thing, or even as synonymous terms. Hence, it has been held that an undertaking entered into upon an appeal, under the Code, to pay, agreeing to pay all damages, without providing for costs, is not sufficient to compel the party to pay the costs; and that an agreement to pay the one, imposes no obligation to pay the other. (*Langley* v. *Warner*, 1 Comst. 607.)

These remarks lead to the conclusion that the recovery of the ten per cent damages was erroneous, as against the sureties, and cannot be sustained. It is very manifest, I think, that they were not embraced within the engagement entered into, and were not such damages as the plaintiffs were entitled to recover in the actions brought by them, but were penalties imposed upon the party litigating for interposing a defense which had no force or validity, and which

the court, in its judgment, considered as set up to harass and delay the opposite party.

It may also be remembered, that the question discussed has been distinctly adjudicated in two of the States, and it has been held, that damages under laws passed subsequent to the period when the undertaking was executed cannot be added to the obligations of a surety. In *Steen* v. *Finley* (25 Miss. 535), the bond upon which the action was brought, was entered into prior to the passage of a law which imposed upon the court the duty of giving "judgment for ten per cent damages, in addition to the interest now allowed by law." The court below gave the ten per cent damages, and the Court of Appeals decided that they could not apply the statute to the case considered, without giving it a retrospective application and enlarging the contract of the sureties; that when the sureties became bound, there was no law imposing such a penalty, and that they could not impose any additional burden not undertaken by them at the time they entered into the bond, and reversed the judgment as to the ten per cent damages, and allowed it to stand as to the balance.

In *Woodson* v. *Johns* (3 Munf. Va. 230), the action was against the principal and sureties upon an injunction bond executed in 1791. An act was passed after its execution, providing that the Court of Appeals, "in all cases where any decree rendered for any sum of money, shall, on appeal therefrom, be affirmed, shall award to the appellee damages at the rate of ten per centum."

Ten per cent damages were allowed, and, on appeal to the Court of Appeals, it was held erroneous upon several grounds —one of which was, that no damages on the affirmance of a decree were allowed by law at the time of executing the bond. The doctrine laid down in this case was afterward affirmed in *Jeter* v. *Laughesne* (5 Galt. 210). There are no cases in this State in conflict with these decisions, and I think they harmonize with the cases to which I have adverted, where the effect of laws were considered, which it was claimed operated retrospectively.

If we concede that the sureties were not legally obligated to pay the ten per cent damages provided for by the amendment cited, the question arises whether the fact of erroneously including these damages in the judgment wholly absolves them from the undertaking.

It is claimed by the defendants, that it was an act of the plaintiffs in procuring the statutory penalty to be included in the judgment, which exonerates the sureties from liability. This position is based upon the assumption, that the undertaking itself was enlarged, and that the act was an alteration of and an addition to the liability which it imposed, which extinguishes the obligation. The rule is well settled, that as between private parties, any alteration in the obligation or contract in respect to which a person has become surety, without the consent of the latter, extinguishes the obligation and discharges him. And this rule applies, irrespective of the inquiry whether the alteration would work to the injury of the surety or not. The reason of the rule is, that the surety never made the contract upon which it is sought to charge him. (*People* v. *Vilas*, 36 N. Y. 459; see also *Rochester City Bank* v. *Elwood*, 21 N. Y. 90.)

The insertion of the ten per cent damages did not, in my opinion, within the principle laid down, affect the obligation or contract of the sureties in these undertakings. It did not add an iota to his responsibility, or increase it in any respect. It was an act outside of the contract and independent of it. The judgment clearly embraced damages which the party was not entitled to recover; but it made no change in the legal relations of the parties, so far as the undertaking is concerned, and did not extend its scope. As has already been shown, this law did not operate retrospectively, and hence, the undertakings did not embrace the ten per cent damages, and adding them to the judgment erroneously would not enlarge them. These damages should not have been allowed, and having been inserted, cannot affect the obligation of the sureties. They still remain liable for what they were obligated to pay before the amendment was passed, and the insertion of an amount beyond this in the judgment, cannot

increase that liability. The fact that a judgment was obtained for a larger amount than the sureties were bound to pay, is not, in my opinion, conclusive upon the question presented as to the enlargement of the obligation. As it is apparent what these damages amounted to, it is not difficult to separate the sums from the remainder of the judgment. If the undertaking had been for costs alone, and the judgment had embraced both costs and damages, there would seem to be no question, in a suit upon the undertaking, the court have power to separate the one from the other, and allow a recovery for the costs alone. It would be quite easy to deduct the damages allowed, which the plaintiff was not entitled to recover. With the same facility the ten per cent damages could have been deducted from the judgments recovered. The fact that the court inadvertently awarded these damages is not conclusive and final as against the sureties. They were not parties in the suit, had no opportunity to be heard on the subject, and no status in the court which would enable them to make a motion to correct a palpable erroneous direction. They were not, therefore, bound by such a direction. Although the insertion of these damages does not affect the undertaking and exonerate the sureties, yet, it being evident that the court erred in allowing them, the judgment is erroneous to this extent, and the amount should be deducted. Otherwise the judgment should be affirmed.

GROVER, J. The only question discussed by the counsel for the appellants was, whether the defendants were discharged as sureties upon the undertakings given upon the appeals to the Count of Appeals, by reason of the allowance by the court of five per cent upon the judgments appealed from, to the respondents as damages, by virtue of subdivision 6, section 11, Laws of 1858, page 493. The other questions raised upon the trial were not insisted upon by the counsel, and there is nothing requiring consideration in any of them. The section above referred to was passed during the pendency in the Court of Appeals of the cases in which the undertakings were given. It is insisted by the counsel for the appellant,

that the statute in question can only be applied prospectively to cases where the appeal was brought after its enactment, and several authorities are cited in support of this position. It is not necessary to determine this point, for if the counsel is correct, it would only show that the Court of Appeals committed an error in rendering judgment. Such, even if committed, would not discharge the sureties upon the undertaking. They undertook, in case of affirmance of the judgment, or any part of it, to pay the amount directed to be paid by said judgment, and all costs and damages which might be awarded against the appellants upon the appeal. This bound the sureties to pay the judgment if affirmed, although the court might have erred in point of law in such affirmance. It also bound the sureties to pay the costs and damages awarded by the court, although a similar error might have been committed in awarding the same. It was therefore immaterial as to the liability of the sureties whether the statute in question applied to cases pending at the time of its passage, or to appeals thereafter brought. If the latter be the true construction, the award of five per cent damages upon the amount of the judgment was unauthorized by law, and the judgment in this respect should have been corrected upon motion. But it is said by counsel, that at the time of the execution and filing of the undertakings by the defendant, there was no law authorizing the court to award as damages any thing but interest upon the affirmance of the judgment. This is correct. The counsel from this argues that if the statute authorizing a further allowance is applicable to cases pending at the time of its passage, the liability of the sureties was thereby increased without their assent, and consequently they were thereby discharged. The same argument would apply to an increase of costs upon affirmance, made by statute. The liability of the sureties would in such case be increased, and the like effect would follow from a statutory increase of the rate of interest, and in either event, the sureties would be discharged if the reasoning of the counsel in the present case is sound. I cannot concur in this reasoning; I think the defendant's contract

was entered into subject to the power of the legislature to change the law in these respects, and that they are bound by the contract, construed by the law as it exists at the time they are called upon to perform it. This class of cases has no analogy to those where parties have, by their own acts, changed their contract to the prejudice of a surety of one without his assent. (See *People* v. *Vilas*, 36 N. Y. 659.) The same reasoning is applicable in this respect to the present case, as was applied by the court in that case. There is no more reason for discharging the sureties in case of a change in the statute authorizing an additional allowance of damages, than there is of a like change imposing additional costs. In neither is the surety discharged. The counsel cites *Stern* v. *Finley* (25 Mississippi, 535). In this case, during the pendency of the action in which the bond was given, the legislature passed an act making it the duty of the court, in that class of cases, to give judgment for ten per cent damages in addition to the interest. The court held, that the statute did not apply to pending, but to future cases only, and accordingly held, that the surety was not liable for the ten per cent damages. In *Woodson* v. *Johns* (3 Munf. Va. 230), a similar judgment was given, the court saying that at the time of the execution of the bond, no such damages were allowed by law. If by this the court designed to be understood that the law was only applicable to future cases, it has no application to the present case, for we have seen that that question can not be raised in this action, but only by motion to correct the judgment of the Court of Appeals, and that motion must be made to that court in the original cause, according to the practice in this State. If the court proceeded upon the ground, that the statute did apply to the case so far as the party was concerned, and that a judgment against him for the damages would have been legal, but that it could not be applied against the surety, for the reason that it enlarged his liability without his consent, the court should have held the surety entirely exonerated by the change. The obligation of the principal was no longer the same. He would be held upon one contract, and his

surety upon another. The liability of the surety would be on the contract under the law, as it was at the time it was entered into, while that of the principal would be more extensive under the law at the time of pronouncing judgment. When the contract is changed by the act of the parties, it is never held that the principal is liable upon the new contract, and the surety upon the old, but the latter is entirely discharged. The judgment appealed from must be affirmed, with costs.

MASON, BACON, DWIGHT, WOODRUFF and CLERKE, JJ., concurring; HUNT, Ch. J., not voting.

Judgment affirmed.