Folger, J.
It is plain that if the only object of Hathorn was to perfect an appeal to this court from the order of the General Term granting, a new trial, then the undertaking given by him was larger than it need have been. (Code, § 334.) It is plain, too, that if his object was to stay the proceedings of Post upon that order, the mere giving of the undertaking, as large as it was, did not effect that object. For that object could not be attained by him by any act of his alone, nor otherwise than by the order of the Supreme Court to that end, or by the stipulation thereto of his opponent. (Coithe v. Crane, 1 Barb. Ch., 21; McMahon v. Allen, 22 How. Pr., 193.) It does not appear from the facts stated in the case that the Supreme Court made any order; nor does it appear that Post or his attorneys entered into any stipulation in writing ; nor, as will be seen further on, was there any oral agreement shown by the case.
The question arises then, whether so much of this undertaking as is beyond what is required by the Code (§ 334), for the perfecting of an appeal, is not without a consideration to support it ? It does not of itself express a consideration. It is a mere promise in writing. It is not sustained by a statute, nor is it given in pursuance of a statute; and so it does not fall within the decision in Thompson v. Blanchard (3 N. Y., 335). It was there said, that a promise does not ex vi termini a *376 but it was held that an undertaking given in pursuance of a statute, and to effect the object allowed by that statute, and the giving of which did effect that object, is upheld by the statute, and has its consideration in the attainment of the object, in pursuance thereof. But here no such consideráis found. This undertaking, in the parts of it now under consideration, is not required nor authorized by any statute; nor is it based" upon the order of any court, nor the agreement of the parties, and, of course, it attains no object, the. effecting of which would furnish a consideration.
Doubtless, there may be a consideration in fact, not expressed in the written promise or undertaking, and if that be shown the promise or undertaking may be sustained. (3 N. Y., supra) And, hence, it is contended, by the learned counsel for the respondent, that the facts stated in the case show a consideration. The language of the case relied upon therefor cannot be fairly made to serve that purpose. That language is as follows: “ Said Hathorn * * * appealed from said order granting a new trial to the Court of Appeals, and upon such appeal the said Hathorn caused an undertaking * * * to be duly executed by * * * his sureties, and to be duly delivered and filed * * * and * * * served on the attorneys for said Post * * * which undertaking was accepted (by them) as sufficient and accordingly (they) stayed all of the plaintiff’s proceedings in the Supreme Court pending the decision of the said appeal in the Court of Appeals.” There is nothing in this language that states or indicates an object in Hathorn to obtain a stay of proceedings, or to do or to seek more than to appeal to the Court of Appeals from the order of the General Term ; or a purpose in him, in the giving of an undertaking, to attain more than the perfecting of his appeal. When the language further states that the attorneys for Post accepted that undertaking as sufficient, the inquiry is, sufficient for what ? Why, sufficient for that which had just been stated to be the object of Hathorn, and his purpose in giving it, to wit: to appeal to the Court of Appeals, and to make his appeal effectual. The *377 statement adds: that accordingly the attorneys for Post stayed all of his proceedings in the Supreme Court. This is not an allegation that their action was a matter compelled by the giving of the undertaking, or sought and obtained by Hathorn thereby; or, that on the giving of it, and by reason of giving it, there was an agreement, written or oral, for a stay. It is barely a statement confined to their action, and represents it as connected with the giving of the undertaking, and taken on account of it. It does not contain the idea that their action could not have been abandoned at any time when it seemed to them or to Post advisable so to do. There is nothing in the statement going to show that the undertaking was given to induce a stay by its own force, or by reason of any agreement for a stay in consideration of the giving of it; or that Post or his attorneys were under obligation or necessity, or could have been compelled to refrain from any action in the Supreme Court, based upon the order for a new trial, which should at any time seem advisable.
Inasmuch, then, as an undertaking is a bare promise, so far as it in itself contains any expression of consideration; as it depends for a consideration to uphold it upon that which it gets from being made in pursuance of a statute authorizing it, or from what may be shown aliunde to exist; as this undertaking, in the parts of it which are in contention, has no authority from statute, and hence no consideration therefrom, and no consideration is otherwise shown; we are of opinion that it is in those parts nudum pactum.
It is true that, in Mitchell v. Thorp (5 Wend., 287), the Supreme Court held that a recognizance entered into on suing out a writ of error was good against the sureties in it, though, by reason of being too late, it had failed to stay the issuing of execution. This was on the strength of Johnson v. Laserre (2 Ld. Raym, 1459), where a needless recognizance was held to be a valid instrument at common law. But a recognizance is an obligation of record, and imports a consideration.
There are other reasons why those parts of it impose no liabil *378 ity upon the maker of it. If it should be conceded that they have a sufficient consideration, the effect of them can be carried no farther than their terms. By those terms the liability of the defendant depends upon the occurrence of a precedent event. That precedent event is, that the judgment appealed from, or some part thereof, shall be affirmed or the appeal dismissed. But that event could never come for there was no judgment appealed from. If it be thought a sticking to the letter, to hold to the exact meaning of the word judgment, the difficulty is not avoided. If the word judgment is to be changed to the word order in one place in the undertaking it is to be so changed in other corresponding places therein. The promise would then be, that if the said order appealed from, or any part thereof, be affirmed, or the appeal be dismissed, he would pay the amount directed to be paid by the Said order, or the part of such amount as to which the said order should be affirmed. But 'the order names no amount. Heither has the precedent event come, upon which the liability is contingent if the promise is read in its exact words; nor if it is read to mean the order appealed from is there any amount named in the order by which the liability can be measured. It went no farther than to permit the plaintiff to try again his case.
Nor is the undertaking to be split into three parts, and the last clause of it, to wit: “And all damages and costs which shall be awarded against said appellant on said appeal,” to be treated as a third and distinct promise. It is but a continuation of the preceding clause of the sentence; and as also dependent upon the happening of the precedent event, an affirmance in whole or in part of the judgment (or order) appealed from. Such is the grammatical construction of the whole sentence. Besides, it is plain that the sentence, as a whole, is taken (save the words “ and costs ”), from section 335 of the Code. It is clear that the undertaking there required must provide for the payment of the damages awarded in this court, on appeal, to a successful respondent. It is clear, too, that the awarding of damages to a respondent *379 is dependent upon the affirmance of his judgment, in whole or in part. And so it is plain that the liability to pay damages is dependent thereupon.
Nor does the word damages in that section, and in an undertaking given under it, mean the damages already adjudged, or those afterward to be recovered by the respondent in the prosecution of his action in the court below. It means that which this court awards upon the rendition of its judgment, in specific amount, or by phrase from which a specific amount is deducible. Thus it means, since this court has had the power to give to the respondent compensation for his delay by a percentage upon his recovery, that which it shall thus award to him. It meant, before that power was conferred, and it means yet, such interest upon the recovery of the respondent as the court shall award to him. The phraseology is not new in the Code. It was known to the Revised Statutes. (2 R. S., 596, § 28, sub. 1.) There, as in the Code, it is put in distinction from the debt or damages recovered in the judgment in the court below. By the third subdivision of the section of the Revised Statutes just cited, the condition of the bond required was also to pay the damages which should be awarded by the court on review.' Tet the penalty required was but $150 on writ of error out of the Supreme Court, and but $300 on writ of error out of the Court for the Correction of Errors. Manifestly, an amount insufficient to meet the debt or damages recovered in most actions taken up for review. (See, also, id., 605, § 80.) Indeed, upon the affirmance of a judgment, the defendant in error had damages for the delay and vexation, to be assessed in the discretion of the court before whom the writ was returnable. (Id., 618, § 32.) The measure of those damages, in addition to the double costs when allowed, was the interest, at the legal rate, when it was recoverable in the original action, or might have been collected on execution. (Law v. Jackson, 2 Wend., 210.) In Horner v. Lyman (4 Keyes, 237-258, decided September, 1868), it is said, by Grover, J., that, before the amendment to the Code providing for the *380 allowance of a percentage upon the amount recovered, there was no law authorizing the court to award as damages any thing but interest. (See, also, Mitchell v. Thorp, 5 Wend., 287.) We think that when the Code speaks of damages awarded on appeal it means the interest or the percentage allowed. And when an undertaking uses the same phrase it means the same. Again, this phrase was made a necessary part of an undertaking in 1848, while the privilege of appeal from an order at General Term granting a new trial was not given until in 1851. And the provision for judgment absolute in this court, and assessment of damage thereon in the court below, was not enacted until 1857. The phrase could not have been used in 1848 with reference to the damages which a party might recover on the order for new trial granted to him, affirmed in this court, with judgment absolute on the stipulation. Nor is there any reason for saying that the phrase naturally applies to and comprehends such damages.
It follows that the liability of the defendant, by the undertaking which he gave, is to pay all costs and damages which were awarded against the appellant Hathorn in this court, not exceeding $500. The whole costs in the action were taxed at $947.40 ; of which but $191.75 were costs incurred by or arising upon the appeal to this court. That was the whole which can be said to have been awarded against the appellant on appeal.
The judgment of the General Term should be reduced to the sum of $191.75, and interest thereon from the 11th August, 1873; and as the appellant has succeeded in all that he has contended for he should have the costs of the proceeding.
The judgment of the General Term should be so modified, and as modified affirmed.
All concur ; Miller, J., not sitting.
Judgment accordingly.